IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JOSH PERIO,                        §
                                   §
            Plaintiff,             §
                                   §
v.                                 §    CIVIL ACTION NO. H-13-1754
                                   §
TITAN MARITIME, LLC and            §
T&T MARINE SALVAGE, INC.,          §
                                   §
            Defendants.            §

## MEMORANDUM OPINION AND ORDER

Defendant Titan Maritime, LLC ("Titan") removed this action from the 129th Judicial District Court of Harris County, Texas, where it was filed under Cause No. 2013-17258.  Pending before the court is Plaintiff's Motion for Remand ("Motion for Remand") (Docket Entry No. 9).  For the reasons discussed below, Perio's Motion for Remand will be denied.

### I.   Factual and Procedural Background

On March 22, 2013, Perio filed his Original Petition and Jury Demand in the 129th Judicial District Court of Harris County, Texas, in which he named his employer, T&T Marine Salvage, Inc. ("T&T"), and Titan as defendants.[1]  Titan asserts that it was never

---

[1]Plaintiff's Original Petition & Jury Demand ("Original Petition"), Exhibit H to Titan Maritime's Brief in Opposition to Plaintiff's Motion for Remand ("Titan's Brief in Opposition"), Docket Entry No. 12-8.

served with this pleading.[2]   On April 5, 2013, Perio filed his
First Amended Original Petition & Jury Demand, naming only Titan as
defendant.[3]   Perio served the Texas Secretary of State as agent for
service of process for Titan on April 18, 2013.[4]   The Texas
Secretary of State forwarded a copy of the Citation and First
Amended Petition to Titan by certified mail, return receipt
requested, on April 23, 2013.[5]   Titan received service of process
on April 26, 2013.[6]

On April 25, 2013, Perio filed his Second Amended Original
Petition & Jury Demand, in which he named both T&T and Titan as
defendants.[7]   Perio's Second Amended Petition, like his previous
petitions, asserts causes of action for negligence and gross
negligence arising out of an injury sustained "in the course and
scope of his employment on or about March 6, 2013, near Puerto
San Antonio, Chile."[8]   According to Perio's Second Amended

---

[2]Titan's Brief in Opposition, Docket Entry No. 12, p. 10.

[3]Plaintiff's First Amended Original Petition & Jury Demand
("First Amended Petition"), Exhibit I to Titan's Brief in
Opposition, Docket Entry No. 12-9.

[4]Copies of Executed Process, Exhibit A to Defendant's Notice
of Removal ("Notice of Removal"), Docket Entry No. 1-1.

[5]Id. at 4.

[6]Id.

[7]Plaintiff's Second Amended Original Petition & Jury Demand
("Second Amended Petition"), Exhibit A to Titan's Brief in
Opposition, Docket Entry No. 12-1.

[8]Id. at 3; see also Original Petition, Exhibit H to Titan's
Brief in Opposition, Docket Entry No. 12-8, p. 3; First Amended
                                                  (continued...)

Petition, his injuries were caused by the "enwrapping of a cable from the vessel onto [his] leg and body," which "launched [him] into the air."[9]   Perio "land[ed] on his back and side . . . injuring his back, side, and body."[10]

On May 28, 2013, T&T filed its Original Answer and Affirmative Defenses in response to Perio's Second Amended Petition.[11]   In its Answer, T&T argued that it was immune from suit under sections 406.034 and 408.001 of the Texas Workers' Compensation Act ("TWCA") because it was a subscriber to workers' compensation insurance, and Perio was injured in the course and scope of his employment.[12]   On June 11, 2013, Titan filed its Special Appearance and Answer objecting to personal jurisdiction because Titan had not been served with Perio's Second Amended Petition and generally denying liability.[13]

---

[8](...continued)
Petition, Exhibit I to Titan's Brief in Opposition, Docket Entry No. 12-9, p. 2.

[9]Second Amended Petition, Exhibit A to Titan's Brief in Opposition, Docket Entry No. 12-1, p. 3.

[10]Id.

[11]T&T Marine Salvage, Inc.'s Original Answer and Affirmative Defenses ("T&T's Answer"), Exhibit K to Titan's Brief in Opposition, Docket Entry No. 12-11.

[12]Id. at 2-4; see also Second Amended Petition, Exhibit A to Titan's Brief in Opposition, Docket Entry No. 12-1, p. 3.

[13]Defendant Titan Maritime LLC's Special Appearance and Answer to Plaintiff's Second Amended Original Petition and Jury Demand, Exhibit B to Notice of Removal, Docket Entry No. 1-2, p. 16.

On June 17, 2013, Titan filed its Notice of Removal in this court.[14]   Titan argues that complete diversity exists between the parties because T&T was improperly joined because T&T asserts in its Answer that it is immune from suit under the Texas Labor Code.[15]

On July 16, 2013, Perio filed his Motion for Remand.[16]   Perio advances two arguments supporting remand.  First, Perio argues that Titan's Notice of Removal was untimely.[17]   Second, Perio argues that, as currently pled, T&T is properly joined and complete diversity is lacking.[18]   Perio also argues that he can establish a cause of action against T&T under the Longshore and Harbor Workers' Compensation Act ("LHWCA").[19]   He asserts that he is a longshoreman who was injured on navigable waters while engaged in maritime employment, thus bringing his injuries within the coverage of the LHWCA.[20]   Perio asserts that T&T does not provide LHWCA coverage, and, accordingly, he argues that he can bring a claim against T&T under 33 U.S.C. § 905(b), which allows an employee to bring an

---

[14]Notice of Removal, Docket Entry No. 1.

[15]Id. at 3.

[16]Motion for Remand, Docket Entry No. 9.

[17]Id. at 1, 3-5.

[18]Id. at 2, 5-9.

[19]Id.

[20]Id. at 5-7.

action for damages against his employer if his employer fails to secure payment of LHWCA compensation.[21]   Perio also argues that the TWCA does not bar his claim against T&T because the LHWCA preempts the TWCA as applied to his causes of action.[22]

On August 8, 2013, T&T filed its Response to Perio's Motion for Remand.[23]   T&T argues that Perio's causes of action are not covered by the LHWCA because his injuries occurred on foreign waters rather than the navigable waters of the United States.[24]   T&T argues that it is a subscriber to workers' compensation insurance under the TWCA, that Perio is currently receiving workers' compensation under the relevant policy, and that Perio's suit against T&T is barred by sections 406.034 and 408.001 of the Texas Labor Code.[25]   T&T also argues that even if Perio's injuries do fall within the coverage of the LHWCA, T&T is a subscriber to LHWCA coverage, and Perio's exclusive remedy is to seek LHWCA compensation.[26]

---

[21]Id. at 2, 5-7.

[22]Id. at 8-9.

[23]T&T Marine Salvage, Inc.'s Response to Plaintiff's Motion for Remand ("T&T's Response"), Docket Entry No. 10

[24]Id. at 1, 5-7.

[25]Id. at 3-5.

[26]Id. at 6.

Also on August 8, 2013, Titan filed its Supplemental Notice of Removal[27] and Brief in Opposition to Plaintiff's Motion to Remand.[28] In its Supplemental Notice of Removal, Titan argues that Perio's Motion for Remand is the first paper filed in the case from which it could be ascertained that Perio's claims fall within the admiralty jurisdiction of the federal courts.[29] Thus, Titan asserts that it is entitled to assert federal admiralty jurisdiction as a basis for removal under 28 U.S.C. § 1441(a)-(b).[30]

In its Brief in Opposition, Titan argues that the LHWCA does not apply because Perio's injuries occurred on foreign waters.[31] Titan also argues that even if the LHWCA applies to Perio's claims his only remedy is to seek LHWCA compensation, and any claim against T&T for damages is barred by 33 U.S.C. § 905(a).[32]   In addition, Titan argues that Perio's Motion for Remand indicates that he is asserting a maritime tort and that removal is therefore proper on the basis of federal admiralty jurisdiction under 28 U.S.C. § 1441(a)-(b).[33]   Titan argues that asserting a supplemental

---

[27]Titan Maritime's Supplemental Notice of Removal ("Supplemental Notice of Removal"), Docket Entry No. 11.

[28]Titan's Brief in Opposition, Docket Entry No. 12.

[29]Supplemental Notice of Removal, Docket Entry No. 11.

[30]Id. at 2-3.

[31]Titan's Brief in Opposition, Docket Entry No. 12, pp. 7, 9-12.

[32]Id. at 12-13.

[33]Id. at 13-15.

basis for removal is proper because the basis asserted was not ascertainable when its Notice of Removal was filed.[34]

## II. **Applicable Law**

Generally, under 28 U.S.C. § 1441(a) any state court civil action over which a federal court would have original jurisdiction may be removed from state to federal court. See Gasch v. Hartford Acc. & Indem. Co., 491 F.3d 278, 281 (5th Cir. 2007). Federal courts have original jurisdiction over civil actions where the parties are diverse and the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a). Diversity jurisdiction requires complete diversity -- that is, the citizenship of each plaintiff must be diverse from the citizenship of each defendant. Caterpillar Inc. v. Lewis, 117 S. Ct. 467, 472 (1996).

Removal jurisdiction depends on the plaintiff's state court pleadings at the time of removal. Pullman Co. v. Jenkins, 59 S. Ct. 347, 349 (1939); Cavallini v. State Farm Mutual Auto Ins., 44 F.3d 256, 264 (5th Cir. 1995). The removing party bears the burden of showing that subject matter jurisdiction exists and that the removal procedure was properly followed. Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002). Ambiguities or doubts are to be construed against removal and in favor of remand. Id.

---

[34]Id.

### III.  **Titan's Notice of Removal was Timely**

Perio argues that removal was untimely under 28 U.S.C. § 1446(b)(1) because Titan did not remove the case within thirty days of service of his First Amended Petition.[35] Under § 1446(b)(1) a notice of removal "shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." Perio argues that his First Amended Petition constitutes the initial pleading in this case and that it was removable on its face because it named only Titan, a diverse party, as defendant.[36] Perio argues that Titan was served with the First Amended Petition on April 18, when Perio served the Texas Secretary of State as agent for service of process for Titan.[37] Thus, Perio argues that the deadline for removal was May 17, 2013.[38] Accordingly, Perio argues that Titan's Notice of Removal, filed on June 17, 2013, was untimely.[39]

Perio also argues that because the case was initially removable, T&T's Answer asserting its immunity under the TWCA cannot serve to create a new thirty-day window for removability

---

[35]Motion for Remand, Docket Entry No. 9, pp. 1-5.

[36]Id.

[37]Id.

[38]Id.

[39]Id.

-8-

under 28 U.S.C. § 1446(b)(3).[40]   Section 1446(b)(3) provides that
"if the case stated by the initial pleading is not removable" a
defendant may file a notice of removal within thirty days after
receipt of "a copy of an amended pleading, motion, order or other
paper from which it may first be ascertained that the case is one
which is or has become removable."   Perio argues that § 1446(b)(3)
is inapplicable because his First Amended Pleading constitutes an
initial pleading that was removable on its face.[41]   Perio argues
that T&T's Answer cannot give rise to a second thirty-day period of
removability on the basis of diversity of citizenship when
diversity of citizenship was obvious in the initial pleading.[42]

     Titan argues that Perio's First Amended Petition does not
constitute his initial pleading.[43]   Titan argues that Perio's
Original Petition, filed on March 22, 2013, which named both Titan
and T&T, Perio's non-diverse employer, as defendants, constitutes
the initial pleading in this case.[44]   Accordingly, Titan argues that
it is not foreclosed from filing a notice of removal under
§ 1446(b)(3) within thirty days of learning from T&T's Answer that
T&T was immune from suit under the TWCA.[45]

---

[40]Id.

[41]Id.

[42]Id.

[43]Titan's Brief in Opposition, Docket Entry No. 12, pp. 7-8.

[44]Id.

[45]Id.

Perio fails to explain why his First Amended Petition, filed two weeks after his Original Petition, should constitute the initial pleading in this case.  The court can only assume that Perio takes this position because his First Amended Petition was the first pleading served on Titan.[46]  Similarly, Titan provides no argument why the thirty-day period for removability under § 1446(b)(3) was not triggered by receipt of Perio's First Amended Petition even if it did not constitute the initial pleading in this case.  Nonetheless, it is clear that Titan was entitled to file its Notice of Removal within thirty days of learning through T&T's Answer that T&T was immune from suit under the TWCA.

Contrary to Perio's assertion that the thirty-day period for removal began when Perio served the Texas Secretary of State as agent for service of process for Titan, case law is clear that "[w]hen service is effected on a statutory agent, the removal period begins when the defendant actually receives the process, not when the statutory agent receives process."  Monterey Mushrooms, Inc. v. Hall, 14 F. Supp. 2d 988, 991 (S.D. Tex. 1998); accord Gordon v. Hartford Fire Ins. Co., 105 Fed. Appx. 476, 480-81 (4th Cir. 2004) (holding that "[t]he time for removal begins when 'the defendant actually has received a copy of the complaint'" and noting that "the overwhelming majority of district courts . . . have held that '[w]hen service is effected on a statutory agent,

---

[46]Copies of Executed Process, Exhibit A to Notice of Removal, Docket Entry No. 1-1.

rather than on an agent appointed by the defendant, the time to remove the action to federal court does not start to run until the defendant actually has received a copy of the complaint.'" (quoting Lilly v. CSX Transp., Inc., 186 F. Supp. 2d 672, 673 (S.D. W. Va. 2002))); McCrary v. Kan. City S. RR., 121 F. Supp. 2d 566, 570 (E.D. Tex. 2000) ("[T]he removal period does not begin to run until the out of state defendant actually is served and not when the Secretary of State receives the process."); see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 119 Sup. Ct. 1322, 1325 (holding that the time to remove is triggered by formal service of the summons and complaint, or receipt of the complaint after formal service of the summons, and explaining that "[a]n individual or entity named as a defendant is not obligated to engage in litigation unless notified of the action, and brought under a court's authority, by formal process."). Thus, the earliest that the thirty-day removal period could have begun in this case is April 26, 2013, when Titan received service of Perio's First Amended Complaint and the Citation.[47]

By the time that Titan had received service of process, however, Perio had already amended his petition to add T&T, a non-diverse party, as a defendant.[48] Thus, although Perio's First Amended Petition may have been removable on its face, it was not

---

[47]Id.

[48]Second Amended Petition, Exhibit A to Titan's Brief in Opposition, Docket Entry No. 12-1.

the live pleading when Titan was served.  Titan could not have removed the case when it was served with Perio's First Amended Petition because the case, at that time, was not removable.  Thus, at no time prior to the filing of T&T's Answer asserting its immunity under the TWCA was Titan a party to a case where it might "be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).  Accordingly, the thirty-day period for removal was not triggered by Titan's receipt of the First Amended Petition, but rather upon the filing of T&T's Answer on May 28, 2013.[49]  Titan filed its Notice of Removal on June 17, 2013, within thirty days of the filing of T&T's Answer.[50]  Thus, Titan's Notice of Removal was timely.

## IV.  __Improper Joinder__

The doctrine of improper joinder ensures that the presence of an improperly joined, non-diverse defendant does not defeat federal removal jurisdiction premised on diversity.  Borden v. Allstate, 589 F.3d 168, 171 (5th Cir. 2009).  The court may ignore an improperly joined, non-diverse defendant in determining subject matter jurisdiction.  Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 572 (5th Cir.) (en banc), cert. denied, 125 S. Ct. 1825 (2005).

---

[49]T&T's Answer, Exhibit K to Titan's Brief in Opposition, Docket Entry No. 12-11.

[50]Notice of Removal, Docket Entry No. 1.

A removing party attempting to prove improper joinder carries a heavy burden.  Great Plains Trust Co. v. Morgan Stanley Dean Witter, 313 F.3d 305, 312 (5th Cir. 2002).  To establish that a non-diverse defendant has been improperly joined in order to defeat diversity jurisdiction the removing party must prove either "'(1) actual fraud in the pleading of jurisdictional facts or (2) an inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"  Smallwood, 385 F.3d at 573 (quoting Travis v. Irby, 326 F.3d 644, 646-47 (5th Cir. 2003)).  Only the second method is at issue in this case.

Under this second type of improper joinder the court must determine "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state [or non-diverse] defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state [or non-diverse] defendant."  Smallwood, 385 F.3d at 573.  A "reasonable basis" requires more than a theoretical possibility of recovery.  Ross v. Citifinancial, Inc., 344 F.3d 458, 462 (5th Cir. 2003).

Whether the plaintiff has alleged a valid cause of action "depends upon and is tied to the factual fit between the plaintiff['s] allegations and the pleaded theory of recovery."  Griggs v. State Farm Lloyds, 181 F.3d 694, 701 (5th Cir. 1999).  Accordingly, a defendant can establish diversity -- and thereby defeat remand -- by showing that the plaintiff's state court

-13-

petition fails to allege "specific actionable conduct" sufficient
to support a cause of action against a non-diverse defendant.  Id.
A mere formulaic recitation of the elements of a cause of action
asserted against a non-diverse defendant is not sufficient under
this standard.

In deciding whether a party was improperly joined all
unchallenged factual allegations are taken into account in the
light most favorable to the plaintiff, Smallwood, 385 F.3d at 575;
and all contested factual issues and ambiguities of state law are
resolved in favor of the plaintiff.  Gasch, 491 F.3d at 281.  The
existence of a single valid cause of action against a non-diverse
defendant requires remand of the entire case to state court.  Gray
v. Beverly Enterprises-Mississippi, Inc., 390 F.3d 400, 412 (5th
Cir. 2004).

In its Notice of Removal Titan argues that complete diversity
exists between the parties because T&T was improperly joined.[51]
Titan argues that Perio has no possibility of recovery against T&T
because T&T is immune from suit under sections 406.034 and 408.001
of the Texas Labor Code.[52]  Apparently conceding that if his injury
is covered by the TWCA then he cannot establish a cause of action
against T&T, Perio argues in his Motion for Remand that his injury
is instead covered by the LHWCA.[53]  Perio's complaint alleges only

---

[51]Id. at 3.

[52]Id.

[53]Motion for Remand, Docket Entry No. 9, pp. 2, 5-7.

-14-

negligence and gross negligence without reference to whether his claim is cognizable under the general maritime law.[54]

**A.  Perio's Claims Against T&T are Barred to the Extent That They are Cognizable Solely Under State Law**

Perio's Second Amended Complaint alleges that Perio "was injured in the course and scope of his employment on or about March 6, 2013, near Puerto San Antonio, Chile."[55]  He alleges negligence and gross negligence and asserts that "T&T SALVAGE was not a subscriber under the Texas Workers' Compensation Act, and it is accordingly fully liable to Mr. Perio for its common-law tort liability to him, with no defenses of contributory negligence or the like permitted by law."[56]

Perio's Second Amended Complaint never mentions whether the injury occurred upon navigable waters or otherwise falls within the cognizance of the general maritime law.[57]  He does assert that he was "sent in February 2013 to work on the salvage of a grounded vessel offshore Puerto San Antonio, Chile" and that his injuries were caused by "the enwrapping of a cable from the vessel onto [his] leg."[58]  In the absence of any allegations in Perio's Second

---

[54]Second Amended Petition, Exhibit A to Titan's Brief in Opposition, Docket Entry No. 12-1, pp. 3-5.

[55]Id. at 3.

[56]Id. at 4.

[57]See id. at 2-5.

[58]Id. at 3.

Amended Complaint that his injuries actually occurred upon navigable waters, Titan removed the case to this court on the basis of diversity jurisdiction upon learning that T&T was immune to suit as a subscriber to workers' compensation insurance under the TWCA.[59]

T&T asserts that it subscribes to a workers' compensation policy in compliance with the TWCA,[60] and T&T has produced a copy of the policy issued by Texas Mutual Insurance Company.[61]   T&T asserts that Perio is currently receiving workers' compensation benefits under the policy and has produced a Notification of First Temporary Income Benefit Payment addressed to Perio and dated May 22, 2013, that explains the amount of workers' compensation benefits that Perio is entitled to under the policy.[62]

Under the TWCA "[r]ecovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage . . . against the employer . . . for the death of or a work-related injury sustained by the employee."  Tex. Lab. Code § 408.001(a).  "The only exception to the exclusive remedy provision is when an employee's death 'was caused by an intentional act or omission of the employer or by the

---

[59]Notice of Removal, Docket Entry No. 1, pp. 2-4.

[60]T&T's Response, Docket Entry No. 10, p. 3-4.

[61]Workers' Compensation and Employers Liability Insurance Policy, Exhibit B to T&T's Response, Docket Entry No. 10-2.

[62]T&T's Response, Docket Entry No. 10, p. 4; Notification of First Temporary Income Benefit Payment, Exhibit C to T&T's Response, Docket Entry No. 10-3.

employer's gross negligence.'" <u>Port Elevator-Brownsville v. Casados</u>, 358 S.W.3d 238, 241 (Tex. 2012) (quoting Tex. Lab. Code § 408.001(b)).

The Texas Supreme Court has held that an employer is entitled to assert the TWCA's exclusive remedy provision upon a showing that it subscribed to workers' compensation insurance, that the plaintiff was an employee, and that the plaintiff suffered a work-related injury. <u>Id.</u> at 239-40, 244. In <u>Casados</u> the parents of an employee who "suffered a fatal, work-related injury while working for two employers that both had workers' compensation coverage," brought an action for negligence and gross negligence against the employer whose workers' compensation carrier denied coverage. <u>Id.</u> The Texas Supreme Court held that because the employer subscribed to workers' compensation insurance and the employee suffered a work-related injury, the plaintiffs were "only entitled to . . . recover workers' compensation benefits and the exclusive-remedy provision in the TWCA bars their negligence claim against [the employer]." <u>Id.</u> at 244. "[A]n employee cannot avoid this statutory bar by arguing that he was not covered under the specific terms of his employer's workers' compensation insurance policy." <u>City of Bellaire v. Johnson</u>, 400 S.W.3d 922, 922 (Tex. 2013).

Perio admits that he is an employee of T&T and that he suffered a work-related injury.[63]  He asserts in his Second Amended

---

[63]Second Amended Petition, Exhibit A to Titan's Brief in Opposition, Docket Entry No. 12-1, p. 3.

Petition that T&T is not a subscriber to workers' compensation insurance.[64] However, T&T has produced conclusive evidence that it does subscribe to such coverage, and asserts that Perio is currently receiving workers' compensation benefits under the relevant policy.[65] Perio essentially concedes this point in his Motion for Remand, arguing, for the first time in this litigation, that T&T's provision of workers' compensation coverage under the TWCA is irrelevant because his injuries fall within the coverage of the LHWCA.[66] Accordingly, to the extent that Perio has asserted a common law cause of action that is subject to the exclusive remedy provision of the TWCA, his claims against T&T are barred by statute and T&T is improperly joined. See <u>Jernigan v. Ashland Oil Inc.</u>, 989 F.2d 812, 814 (5th Cir. 1993); <u>Carriere v. Sears, Roebuck & Co.</u>, 893 F.2d 98, 101 (5th Cir. 1990).

**B.   Perio's Injuries Occurred Outside of the Territorial Reach of the LHWCA**

In his Motion for Remand Perio argues that T&T was not fraudulently joined because he has a valid clam against T&T under the LHWCA, rather than the TWCA.[67] Based on the allegations in

---

[64]<u>Id.</u> at 4.

[65]T&T's Response, Docket Entry No. 10, p. 4; Workers' Compensation and Employers Liability Insurance Policy, Exhibit B to T&T's Response, Docket Entry No. 10-2; Notification of First Temporary Income Benefit Payment, Exhibit C to T&T's Response, Docket Entry No. 10-3.

[66]Motion for Remand, Docket Entry No. 9, pp. 2, 5-9.

[67]<u>Id.</u>

paragraph 4.1 of his Second Amended Petition that he was "injured in the course and scope of his employment on or about March 6, 2013 . . . [while] work[ing] on the salvage of a grounded vessel offshore Puerto San Antonio, Chile,[68] he asserts that he is a longshoreman and that he was injured on the navigable waters of the United States while engaged in maritime employment."[69] Perio argues that the LHWCA preempts the TWCA and that if his injuries are covered by the LHWCA, he is entitled to bring this negligence action against T&T as a nonsubscriber to LHWCA coverage under 33 U.S.C. § 905(b).[70]

T&T asserts that it subscribes to LHWCA coverage and has produced a policy endorsement to that effect.[71]  Titan argues that if the LHWCA applies to Perio's claims, Perio's negligence claims asserted in this action are barred by the exclusive remedy provision of 33 U.S.C. § 905(a).[72]  Both Titan and T&T argue that Perio's injuries, which he incurred within the territorial waters of Chile, are outside of the territorial limits of LHWCA coverage.[73]

---

[68]Second Amended Petition, Exhibit A to Titan's Brief in Opposition, Docket Entry No. 12-1, p. 3 ¶ 4.1.

[69]Motion for Remand, Docket Entry No. 9, pp. 2, 5-6.

[70]Id. at 7-9.

[71]T&T's Response, Docket Entry No. 10, p. 6; Longshore and Harbor Workers' Compensation Act Coverage Endorsement, Exhibit B to T&T's Response, Docket Entry No. 10-2, p. 10.

[72]Titan's Brief in Opposition, Docket Entry No. 12, pp. 12-13.

[73]T&T's Response, Docket Entry No. 10, pp. 5-6; Titan's Brief in Opposition, Docket Entry No. 12, pp. 11-12.

"To receive benefits under the LHWCA, a worker must satisfy both a situs and status test." Anaya v. Traylor Bros., Inc., 478 F.3d 251, 254 (5th Cir. 2007). "The situs test concerns geographic areas covered by the LHWCA, whereas the status test concerns an employee's type of work activities." Id. In order to meet the situs test, an injury must occur "upon the navigable waters of the United States." Id. "The status test defines an employee as 'any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and ship-breaker.'" Id. (quoting Bienvenu v. Texaco, Inc., 164 F.3d 901, 904 (5th Cir. 1999)).

Perio argues that he meets both the situs test and the status test for LHWCA coverage.[74] He asserts that he is a longshoreman and that he was injured while engaged in the salvage of a grounded vessel offshore of Puerto San Antonio, Chile.[75] He specifically alleges that he was injured on the navigable waters of the United States.[76]

Perio bases his argument that the situs of his injury, in the surf zone off the coast of Chile, is within the navigable waters of the United States, on the Fifth Circuit's holding in Reynolds v. Ingalls Shipbuilding Division, Litton Systems, Inc., 788 F.2d 264

---

[74]Motion for Remand, Docket Entry No. 9, pp. 5-7.

[75]Id. at 2, 5-6.

[76]Id. at 6-7.

(5th Cir. 1986), that the LHWCA extends to injuries suffered by longshoremen on the high seas.[77] Id. at 268-72. However, the Fifth Circuit has consistently interpreted the LHWCA to exclude coverage for longshoremen injured within the territorial limits of a foreign state. See, e.g., Prestenbach v. Global Int'l Marine Inc., 244 Fed. App'x 557, 561 n.3 (5th Cir. 2007) (construing the holding in Aparicio v. Swan Lake, 643 F.2d 1109 (5th Cir. Unit A Apr. 1981), to have "established that Sieracki remedies were still available to longshoremen not covered by the LHWCA (because, for example, their injuries occurred in foreign waters)" (discussing Seas Shipping Co. v. Sieracki, 66 S. Ct. 872 (1946))); Smith v. Harbor Towing & Fleeting, Inc., 910 F.2d 312, 314-15 (5th Cir. 1990) (declining to extend to Jones Act seamen the holding in Cormier v. Oceanic Contractors, Inc., 696 F.2d 1112 (5th Cir. 1983), that an employee "working aboard a vessel in a foreign country, and thus beyond the reach of the LHWCA, was entitled to Sieracki seaman status"); Cormier, 696 F.2d at 1113 (holding that a welder "injured when he fell while working aboard a barge moored for loading" in Dubai, United Arab Emirates, was outside of the LHWCA's coverage and noting that "the employee, although a harborworker, was not under the reach of the LHWCA because he worked in a foreign country"); Burks v. Am. River Transp. Co., 679 F.2d 69, 74-75 (5th Cir. Unit A 1982) (noting that the plaintiff in Aparicio was not covered by the

---

[77]Id.; BIMCO Wreckstage Agreement, Exhibit C to Titan's Brief in Opposition, Docket Entry No. 12-3, p. 2.

LHWCA for two independent reasons, one of which was because the situs of his injuries was "outside the territorial reach of the LHWCA"), abrogated on other grounds by Lozman v. City of Riviera Beach, Fla., 133 S. Ct. 735 (2013); Aparicio, 643 F.2d at 1118 n.17 ("[W]e note that the pockets of Sieracki seamen remaining after the 1972 amendments may include those longshoremen and harbor workers who, though privately employed, are injured in a foreign country and thus are not within the territorial coverage of the LHWCA.").

The only reasonable interpretation of Perio's assertion in his Second Amended Petition that he was injured "in the course and scope of his employment on or about March 6, 2013, near Puerto San Antonio, Chile,"[78] as supplemented by his Motion for Remand, where he asserts that his "injury, off the coast of Chile"[79] occurred while he "was engaged in the salvage of a vessel offshore,"[80] is that he was injured while working within the territorial waters of Chile. This interpretation, which Perio has not contested, means that he has not satisfied the situs requirement for an LHWCA claim. Therefore, whether T&T subscribed to LHWCA coverage is irrelevant and Perio cannot establish a claim against T&T as a nonsubscriber to LHWCA coverage under 33 U.S.C. § 905(b).

---

[78]Second Amended Petition, Exhibit A to Titan's Brief in Opposition, Docket Entry No. 12-1, p. 3.

[79]Motion for Remand, Docket Entry No. 9, p. 6.

[80]Id. at 5.

Because Perio cannot establish a claim against T&T under state law or the LHWCA, removal would normally be proper on the basis of diversity jurisdiction as alleged in Titan's Notice of Removal.[81] However, the court has serious concerns whether Perio's claims are preempted by the general maritime law.

Perio's Motion for Remand alleges that the injuries complained of in his Second Amended Petition occurred on navigable waters while he was "engaged in the salvage of a vessel . . . off the coast of Chile."[82]  Neither party has briefed the court on how the applicability of maritime law to this case would affect Perio's ability to recover against T&T in state court.  Whether maritime law applies could therefore bear on whether T&T is improperly joined.

In addition, Perio has consistently requested a jury trial.[83] If complete diversity exists, Perio would be entitled to a jury trial in this court.  See Luera v. M/V Alberta, 635 F.3d 181, 187-96 (5th Cir. 2011).  However, Titan argues that this case is removable based on the courts' original admiralty jurisdiction.[84] There is no right to a jury trial in the federal admiralty court.

---

[81]Notice of Removal, Docket Entry No. 1, p. 3.

[82]Motion for Remand, Docket Entry No. 9, pp. 5-6.

[83]Second Amended Petition, Exhibit A to Titan's Brief in Opposition, Docket Entry No. 12-1, p. 8; Plaintiff's Jury Demand, Docket Entry No. 3.

[84]Supplemental Notice of Removal, Docket Entry No. 11.

See id. at 188-89.  Therefore, the saving to suitors clause might preclude removal under § 1444 as an "Act of Congress" that preserves the right to a jury trial.

### V.  Titan's Supplemental Notice of Removal

Titan filed its Supplemental Notice of Removal on August 6, 2013.[85]  Titan argues that its Supplemental Notice of Removal was timely and properly filed because the alleged basis for removal, the federal courts' original admiralty jurisdiction, was not ascertainable until after the case had already been removed.[86]

The Fifth Circuit has stated that "to ascertain" is "'to make certain, exact, or precise'" or "'to find out or learn with certainty.'"  Bosky v. Kroger Texas, LP, 288 F.3d 208, 211 (5th Cir. 2002) (quoting Webster's Ninth New Collegiate Dictionary 107 (1990)).  Therefore, the information supporting removal must be "unequivocally clear and certain" to trigger the thirty-day removal period.  Id.; see also Cole ex rel. Ellis v. Knowledge Learning Corp., 416 F. App'x 437, 440 (5th Cir. 2011).  This bright-line rule protects defendants faced with an "equivocal record" from being forced to engage in "protective" removal.  Bosky, 288 F.3d at 211.

Although a party generally may not amend its removal notice more than thirty days after removal to assert a new basis for removal, an amendment is permissible when the newly alleged basis

---

[85]Id. at 3.

[86]Id. at 3.

for removal did not exist or was not ascertainable when the notice of removal was filed. See Wilson v. Int'l Bus. Machs. Corp., No. 3:11-CV-0944-G, 2011 WL 4572019, at *2-3 (N.D. Tex. Oct. 3, 2011) (noting that "courts have been willing to permit amendments to a notice of removal when the new basis did not exist until after the relevant thirty day period" and listing cases allowing such amendments); Davis v. Life Investors Ins. Co. of Am., Inc., 214 F. Supp. 2d 691, 693 (S.D. Miss. 2002) (holding that an amendment to a notice of removal is proper when the basis for removal did not exist when the notice of removal was filed and noting that "it would be senseless" not to allow such an amendment "given that if the case were remanded on the sole ground asserted in the removal petition, [the defendant] would then be allowed to remove the case a second time on th[e] new basis" (citing Green v. R.J. Reynolds Tobacco Co., 274 F.3d 263, 266 (5th Cir. 2001))). "When a defendant has the right to amend a notice of removal after the initial thirty day period because of a new basis for federal subject matter jurisdiction, it has thirty days under the second paragraph of Section 1446(b) to make that amendment." Wilson, 2011 WL 4572019, at *3.

Perio first indicated that his claims might be cognizable under the general maritime law in his Motion for Remand, filed on July 16, 2013.[87]  In arguing that the LHWCA applied to his claims,

---

[87]Motion for Remand, Docket Entry No. 9, pp. 2, 5-7.

Perio alleged that his injuries occurred on the "navigable waters of the United States."[88]  He also alleged that he is a longshoreman whose injuries occurred while he was "engaged in the salvage of a vessel offshore."[89]

Perio's Second Amended Petition alleged only that he was injured "in the course and scope of his employment on or about March 6, 2013, near Puerto San Antonio, Chile" when "a cable from the vessel" wrapped around his leg.[90]  Such language does not make "unequivocally clear and certain" that Perio's claims may be governed by the general maritime law.  See Bosky, 288 F.3d at 211.  Accordingly, Titan's Supplemental Notice of Removal, filed within thirty days of Perio's Motion for Remand, was timely and properly filed.

## VI.  Applicability of the General Maritime Law

On the facts presented, the court is unable to determine whether and to what extent Perio's cause of action is governed by the general maritime law.  The parties' Joint Discovery/Case Management Plan Under Rule 26(f) states that "Plaintiff seeks damages against Defendants under Texas state law for alleged injuries to his back and side."[91]  However, given the current

---

[88]Id. at 6.

[89]Id. at 2, 5-6.

[90]Second Amended Petition, Exhibit A to Titan's Brief in Opposition, Docket Entry No. 12-1, p. 3.

[91]Joint Discovery/Case Management Plan Under Rule 26(f), Docket Entry No. 13.

posture of this case, it is unclear whether and to what extent Perio's claims may be preempted by the general maritime law. Accordingly, the court has serious concerns about it's jurisdiction in this case.

Traditionally, maritime claims brought in state court were not removable. See Romero v. Int'l Terminal Operating Co., 79 S. Ct. 468, 475 n.16 (1959) ("The removal provisions of the original Judiciary Act of 1789 conferred a limited removal jurisdiction, not including cases of admiralty and maritime jurisdiction.  In none of the statutes enacted since that time have saving-clause cases been made removable."), superseded by statute on other grounds, 45 U.S.C. § 59.  As explained in Ryan v. Hercules Offshore, Inc., No. H-12-3510, 2013 WL 1967315 (S.D. Tex. May 13, 2013), the nonremovability of maritime claims has been attributed to the particular language of 28 U.S.C. § 1441(a)-(b).  Id. at *2-*5.

Titan argues that removal based on the court's admiralty jurisdiction is permissible under the revised language of 28 U.S.C. § 1441.[92]  The court is concerned, however, whether the saving to suitors clause contained in 28 U.S.C. § 1333 is a bar to removal jurisdiction in cases such as this one where complete diversity is lacking.

---

[92]Supplemental Notice of Removal, Docket Entry No. 11, p. 2; Titan's Brief in Opposition, Docket Entry No. 12, pp. 13-15.

-27-

A.    **The Language of § 1441**

Section 1441(a) provides that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant."  Before December of 2011 subsection (b) contained language limiting the scope of subsection (a):

> (b)  Any civil action of which the district courts have original jurisdiction founded on a claim or right under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.  Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C.A. § 1441(b) (West 2006).  Under the prior version of § 1441(b) only cases "founded on a claim or right under the Constitution, treaties or laws of the United States" were removable without regard to the parties' citizenship.  Id.  Subsection (b)'s specific requirement that "any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought" was construed as the "Act of Congress" within the meaning of subsection (a) that prevented actions falling within the district courts' original admiralty jurisdiction from being removed.  Ryan, 2013 WL 1967315, at *4-*5; see also In re Dutile, 935 F.2d 61, 62 (5th Cir. 1991) ("One of these express provisions [preventing removal] is found in § 1441(b).").

-28-

The statute was amended in December of 2011.  See Ryan, 2013 WL 1967315, at *4-*5.  The operative language of subsection (a) as it pertains to the removability of claims within the original jurisdiction of the district courts is unchanged.  However, subsection (b) no longer contains the language prohibiting the removal of claims falling within the original jurisdiction of the district courts unless "none of the . . . defendants is a citizen of the State in which such action is brought."  Id. at *2. Instead, the current version of subsection (b) reads as follows:

> **(b) Removal based on diversity of citizenship.--(1)** In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.
>
> **(2)** A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441(b).  As recognized in Ryan, the plain language of the current version of § 1441 allows for the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  Ryan, 2013 WL 1967315, at *2, *5.  The court in Ryan concluded that because the district courts have original jurisdiction over admiralty and maritime claims under 28 U.S.C. § 1333, and because the amended version of § 1441(b) no longer prohibits removal, admiralty claims are removable under the revised language of § 1441(a).  Id. at *5.

**B.    The Saving to Suitors Clause**

The saving to suitors clause is a feature of the congressional grant of original admiralty jurisdiction to the federal district courts in 28 U.S.C. § 1333.  Section 1333(1) states that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."  The saving to suitors clause preserves a plaintiff's right to a common law remedy, not to a nonfederal forum.  The Moses Taylor, 71 U.S. (4 Wall.) 411, 431 (1867); Tenn. Gas Pipeline v. Hous. Cas. Ins. Co., 87 F.3d 150, 153 (5th Cir. 1996) (quoting Poirrier v. Nicklos Drilling Co., 648 F.2d 1063, 1066 (5th Cir. Unit A June 1981).  The original language of the saving to suitors clause made this distinction more explicitly by "saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it."  Madruga v. Superior Court, 74 S. Ct. 298, 300 (1954) (quoting the original language of the saving to suitors clause and noting that the revised language "in no way narrowed the jurisdiction of the state courts under the original 1789 Act"); see also Lewis v. Lewis & Clark Marine, Inc., 121 S. Ct. 993, 998-99 (2001) (describing the revisions Congress has made to the language in each iteration of the saving to suitors clause and noting that "its substance has remained largely unchanged").

1.  The Saving to Suitors Clause Preserves the Historic
    Concurrent Jurisdiction of the State and Federal Courts
    With Respect to Common Law Maritime Claims

The Supreme Court has interpreted the saving to suitors clause
to "permit[] persons to sue on maritime claims in common law
courts." Madruga, 74 S. Ct. at 300.  Contained, as it is, in a
jurisdictional statute, the saving to suitors clause is
jurisdictional in nature.  It has been interpreted specifically to
allow plaintiffs to pursue a common law remedy in a common law
court.  Romero, 79 S. Ct. at 475 ("[C]ommon-law remedies were,
under the saving clause, enforceable in the courts of the States
and on the common-law side of the lower federal courts when the
diverse citizenship of the parties permitted."); Madruga, 74 S. Ct.
at 301 ("[T]he jurisdictional act does leave state courts
'competent' to adjudicate maritime causes of action in proceedings
'in personam,' that is, where the defendant is a person, not a ship
or some other instrument of navigation.").

In reviewing the history of the clause, the Court in Lewis
noted that "the saving to suitors clause was 'inserted, probably,
from abundant caution, lest the exclusive terms in which the power
is conferred on the District Courts might be deemed to have taken
away the concurrent remedy which had before existed.'" Lewis, 121
S. Ct. at 999 (quoting New Jersey Steam Nav. Co. v. Merchants' Bank
of Boston, 47 U.S. (1 How.) 344, 390 (1848)).  Accordingly, the
saving to suitors clause "'leaves the concurrent power where it

stood at common law.'"   Id. (quoting New Jersey Steam Nav. Co., 47
U.S. (1 How.) at 390).

The saving to suitors clause has thus been held to preserve
the concurrent jurisdiction of the state and federal courts
regarding maritime claims where the common law was competent to
provide a remedy, and to afford exclusive jurisdiction to the
federal courts where the common law was not so competent.   See,
e.g., Madruga, 74 S. Ct. at 301 ("Admiralty's jurisdiction is
'exclusive' only as to those maritime causes of action begun and
carried on as proceedings in rem, that is, where a vessel or thing
is itself treated as the offender and made the defendant by name or
description in order to enforce a lien.").

> 2.   The Saving to Suitors Clause Preserves a Broad Range of
>       Unenumerated Remedies Under the General Maritime Law

The Supreme Court has recognized that the saving to suitors
clause preserves a broad range of undefined common-law remedies.
See Lewis, 121 S. Ct. at 1005 (rejecting "arguments to limit and
enumerate the saved remedies under the saving to suitors clause
. . . in view of the consistent recognition by Congress and this
Court that both state and federal courts may be proper forums for
adjudicating [maritime] claims").   The Court has noted that "[t]he
'right of a common law remedy,' so saved to suitors, . . .
include[s] all means other than proceedings in admiralty which may
be employed to enforce the right or to redress the injury
involved."   Id. at 999 (quoting Red Cross Line v. Atlantic Fruit

-32-

Co., 44 S. Ct. 274, 277 (1924).  "It includes remedies *in pais*, as well as proceedings in court; judicial remedies conferred by statute, as well as those existing at the common law; remedies in equity, as well as those enforceable in a court of law."  Id. (quoting Red Cross Line, 44 S. Ct. at 277).

In Lewis the Supreme Court reversed a decision of the Eighth Circuit that because the plaintiff did not request a jury trial in the state court, he had not sought a saved remedy in his state court action.  Id. at 998, 1005.  In holding that the plaintiff could pursue his claims in state court, the Supreme Court explained that the saving to suitors clause "extends to 'all means other than proceedings in admiralty which may be employed to enforce the right or to redress the injury involved'" and observed that "[t]rial by jury is an obvious, but not exclusive, example of the remedies available to suitors."  Id. at 1004 (quoting Red Cross Line, 44 S. Ct. at 277).  "Thus, the saving to suitors clause preserves remedies and the concurrent jurisdiction of state courts over some admiralty and maritime claims."  Id.

3.  It is Unclear Whether the Saving to Suitors Clause is an Act of Congress that Would Prevent Removal Solely on the Basis of the Federal Courts' Original Admiralty Jurisdiction

Courts have consistently held that the saving to suitors clause does not guarantee a plaintiff the right to a nonfederal forum.  See, e.g., Tenn. Gas Pipeline, 87 F.3d at 153.  However,

very few statutes carry such a guarantee and even a cause of action under state law may be removed on the basis of diversity jurisdiction. See 28 U.S.C. §§ 1332(a), 1441(b).

In The Moses Taylor the Supreme Court stated that the saving to suitors clause "only saves to suitors the right of a common-law remedy, where the common law is competent to give it. It is not a remedy in the common-law courts which is saved, but a common-law remedy." The Moses Taylor, 71 U.S. (4 Wall.) at 431 (internal quotation marks omitted). The Court employed this language in order to draw a distinction between remedies available at common law, which were preserved under the clause, and remedies only available by statute, which were not.

In Romero the Supreme Court discussed the historic role of state courts in adjudicating maritime claims and stated that the saving to suitors clause was meant to ensure that plaintiffs could continue to pursue their common law claims in common law courts. See id. at 479-80 ("Parties in maritime cases are not compelled to proceed in admiralty at all, as they may resort to their common-law remedy in the State Courts, or in the Circuit Court, if the party seeking redress and the other party are citizens of different states."). The Court stated that free removability of saving-clause actions would "have a disruptive effect on the traditional allocation of power over maritime affairs in our federal system" and that "the historic option of a maritime suitor pursuing a

-34-

common-law remedy to select his forum, state or federal, would be taken away." Id.

Although the Court in Romero did not have to reach the issue of whether the saving clause itself barred removal of maritime claims against non-diverse defendants, it identified the goal of the clause as preservation of the concurrent jurisdiction of state and federal courts over admiralty matters as it existed prior to the Judiciary Act of 1789. Id. at 480; see also Lewis, 121 S. Ct. at 999 (observing that the saving to suitors clause "leaves the concurrent power where it stood at common law" (quoting New Jersey Steam Nav. Co., 47 U.S. (1 How.) at 390)). Given such pronouncements, it would not be unreasonable to conclude that the congressional grant of jurisdiction in § 1333 contains a prohibition of removal through the saving to suitors clause. Indeed, the Supreme Court has been careful in its admiralty jurisprudence to ensure that statutory interpretation did not lead to a finding that "revolutionary procedural change had undesignedly come to pass." Id. at 478.

Mindful of the long-recognized goal of preserving an ancient body of maritime remedies, both substantive and procedural, and of the Supreme Court's reluctance to define the scope of the remedies preserved by the savings to suitors clause, it is unclear to the court whether the saving to suitors clause contained in 28 U.S.C. § 1333 is an Act of Congress that would proscribe removal on the

basis of the federal courts' original admiralty jurisdiction. Given the nature and stage of this action, resolution of this issue may be necessary to a determination of the propriety of remand. Because the current state of the record does not lend itself to the resolution of this issue, the court will require additional briefing by the parties.

If Perio believes that remand is appropriate on this basis, he may file a motion, within twenty days of the entry of this Memorandum Opinion and Order, addressing the following issues: (1) whether he has adequately alleged a maritime claim in his Second Amended Petition; (2) whether his claims are governed or preempted by the general maritime law; (3) whether he would be able to recover against T&T under the general maritime law, if applicable, in state court; (4) whether and to what extent preemption by the general maritime law would affect the court's removal analysis; and (5) whether the federal courts' original admiralty jurisdiction provides an independent basis for removal as argued in Titan's Supplemental Notice of Removal. Defendants Titan and T&T will have twenty days to respond, and Perio will have ten days to reply.

## VII.  Conclusions and Order

The court concludes that to the extent that Perio's claims are cognizable solely under state law, complete diversity exists because defendant T&T is improperly joined.  The court further

concludes that Titan's Notice of Removal was timely filed because it was not ascertainable that complete diversity might exit until T&T filed its Answer on May 28, 2013.  Perio's Motion for Remand (Docket Entry No. 9) is therefore **DENIED.**

The court also concludes that Titan's Supplemental Notice of Removal was timely filed because it was not ascertainable that Perio's claims might be preempted by the general maritime law until Perio filed his Motion for Remand.  If Perio believes that remand is appropriate on this basis, he can file a motion in accordance with the court's instructions as outlined in § VI.B.3, above.

**SIGNED** at Houston, Texas, on this 8th day of October, 2013.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-37-